UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES T. CYRUS, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:10 CV 21 WWE |
| : | |
| PAPA'S DODGE INC., : | |
|     Defendant. : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff James T. Cyrus claims defendant Papa's Dodge Inc. violated his rights pursuant to (1) the American with Disabilities Act ("ADA") of 1990, 42 U.S.C. §§ 12111, *et seq.*; (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*; (3) Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e; and (4) the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-58(a) *et seq.* Plaintiff also asserts a fifth claim of intentional infliction of emotional distress. Specifically, plaintiff alleges that defendant terminated him because of his prostate cancer.

Defendant has moved for summary judgment on all five counts. For the following reasons, defendant's motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff began his employment with defendant on January 13, 2006. He was initially hired as a used car manager at defendant's primary location, 585 East Main Street, New Britain, Connecticut. In January 2007, defendant appointed plaintiff to manage defendant's dealership at 724 Allen Street, New Britain. The transfer increased plaintiff's responsibilities and pay. Defendant communicated to plaintiff his hopes that plaintiff could help the Allen Street business

1

grow and characterized plaintiff's new position as one in which he could be "his own boss."

In September 2007, plaintiff informed defendant that he was suffering from prostate cancer and needed surgery. Plaintiff requested and was granted a three-to-four week leave of absence for the surgery and recovery. To cover his absence, plaintiff secured a temporary employee, Larry Main. Defendant hired Main, a former employee, to cover for plaintiff while he was out for surgery on October 15, 2007, and for the period of plaintiff's recovery.

Despite his physician's recommendation that he be out of work for three-to-four weeks, plaintiff returned to work significantly sooner, on October 19, 2007. Plaintiff worked half-day shifts on October 19 and 20. On October 22, plaintiff had a follow-up doctor's appointment. Defendant terminated plaintiff on October 23, 2007 and replaced him with Larry Main.

Plaintiff alleges that defendant terminated him because of his cancer diagnosis and corresponding requests for accommodation. Plaintiff stressed that both sales and profits increased under his leadership and that defendant's proffered reasons for termination are pretext.

Defendant contends that the transfer of plaintiff to the Allen Street location was motivated by discord between plaintiff and other employees at the East Main Street dealership. However, plaintiff was never informed of any alleged discord. Defendant admits that plaintiff's transfer was presented only as an opportunity to grow the business, and not as a solution to any problem.

After two or three months at the Allen street location, defendant claims that plaintiff began to have performance problems. Defendant cited problems with subordinates, excessive time away from the dealership, extended lunch breaks, and declining sales numbers as the grounds for plaintiff's termination. Upon termination, plaintiff claims that despite his request for

explanation, he was given none.  Dominic Papa, owner of Papa's Dodge Inc., asserted that he did not feel comfortable disciplining plaintiff and did not have the heart to fire him.  Mr. Papa and plaintiff were both pilots in Vietnam.  Mr. Papa claims that the lack of explanation for plaintiff's termination resulted in part from Mr. Papa's respect for plaintiff.

Plaintiff's personnel file does not contain any documentation of discipline or corrective measures.  Indeed, defendant admits that plaintiff was not warned about the problems for which he was allegedly terminated.

## **DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the

nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**ADA Disability Discrimination Claim**

Plaintiff claims that defendant discriminated against him in violation of the ADA, 42 U.S.C. §§ 12111, *et seq*.  Courts analyze ADA discrimination claims under the *McDonnell Douglas* burden-shifting framework.  See Heyman v. Queens Vill. Comm. For Mental Health, 198 F.3d 68, 72 (2d Cir. 1999).  In order to establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability."  Cameron v. Cmty. Aid for Retarded Children Inc., 335 F.3d 60, 63 (2d Cir. 2003).  Once the plaintiff has established a *prima facie* showing of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employment action."  McDonnell Douglas, 411 U.S. 792, 802 (1973).  If the defendant proffers a legitimate, nondiscriminatory reason for the challenged

action, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Hongyan Lu v. Chase Inv. Services Corp., 412 Fed. Appx. 413, 415 (2d Cir. 2011) (quoting Weinstock v. Columbia Univ., 224 F.3d 22, 42 (2d Cir. 2000)).  The burden then shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination.  Id.

It is not disputed that defendant is an employer subject to the ADA under the liberal construction Courts have adopted to analyze ADA claims.  Plaintiff's qualification to perform the essential functions of his job is also undisputed.  The parties disagree over whether plaintiff was disabled within the meaning of the ADA and whether he suffered an adverse employment action because of his disability.

42 U.S.C.A. § 12102 provides as follows:

> § 12102. Definition of disability
> As used in this chapter:
> (1) Disability. The term "disability" means, with respect to an individual—
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment (as described in paragraph (3)).
>
> (2) Major life activities
> (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
> (B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

>(3) Regarded as having such an impairment. For purposes of paragraph (1)(C):
>(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

Plaintiff, a cancer patient, has sufficiently shown that he is disabled under the ADA because he has a record of his physical impairment. Prostate cancer substantially limits the operation of major bodily functions, as evidenced by plaintiff's catheterization. Moreover, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

Plaintiff also qualifies as disabled under the "being regarded as having such an impairment" definition. Defendant perceived plaintiff as having cancer. A reasonable jury could find that defendant terminated plaintiff because of his cancer, a physical impairment. Indeed, CHRO found defendant's explanation for plaintiff's termination not to be credible. Viewed in the light most favorable to plaintiff, these facts are sufficient to demonstrate the existence of a genuine dispute of material fact.

Plaintiff had a clean disciplinary record and sales increased under his management. This evidence contradicts defendant's claims that plaintiff had performance problems, as does plaintiff's promotion which defendant attempts to characterize as a reprimand. The timing of plaintiff's termination, one week after his surgery, bolsters plaintiff's argument that he suffered an adverse employment action because of his disability. Plaintiff has met his burden at the

summary judgment stage of coming forward with evidence that defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination. Therefore, defendant's motion for summary judgment is denied with respect to the ADA claim.

**CFEPA Disability Discrimination Claim**

Plaintiff claims defendant violated his rights pursuant to CFEPA, Conn. Gen. Stat. §§ 46a-58(a) *et seq*. The statutory definition of a physically disabled person, for purposes of the CFEPA, is: "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness . . ." Conn. Gen. Stat. § 46a-51(15). CFEPA protection was intended "to be at least as co-extensive as its federal statutory counterparts." Shaw v. Greenwich Anesthesiology Associates, P.C., 137 F. Supp. 2d 48, 65 (D.Conn. 2001). Given that plaintiff's ADA disability discrimination claim has survived summary judgment, it is clear that his disability discrimination claim under CFEPA, the standard for which is not as stringent as the ADA, should also survive. Therefore, with regard to Plaintiff's CFEPA disability discrimination claim, defendant's motion for summary judgment is denied.

**Title VII Claim**

Plaintiff claims defendant violated rights secured to him under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e. However, plaintiff has failed to make allegations to support this claim. Furthermore, plaintiff did not respond to the portion of defendant's motion challenging this claim. Therefore, defendant's motion for summary judgment on the Title VII claim is granted.

**Rehabilitation Act Claim**

Plaintiff claims defendant violated rights secured to him under the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq*.  However, plaintiff failed to make allegations to support the claim.  Furthermore, plaintiff did not respond to the portion of defendant's motion challenging this claim.  Therefore, defendant's motion for summary judgment on the Rehabilitation Act claim is granted.

**Intentional Infliction of Emotional Distress Claim**

Plaintiff's final claim is for intentional infliction of emotional distress.  In Petyan v. Ellis, the Connecticut Supreme Court laid out the elements of such a claim:

> It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

200 Conn. 243, 253 (1986).

Defendant has challenged only the second element - that of extreme and outrageous conduct.  The Restatement (Second) of Torts describes such conduct:

> [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

Restatement (Second) of Torts § 46 comment d (1965).

Mere termination of employment is usually insufficient to satisfy the extreme and outrageous standard for a claim for intentional infliction of emotional distress.  See Harhay v.

Blanchette, 160 F. Supp. 2d 306, 315 (D. Conn. 2001). However, termination may give rise to a cause of action where the defendant is aware of peculiar sensitivities of the plaintiff. "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." Restatement (Second), Torts § 46, comment f.

In this case, reasonable people may disagree about the egregiousness of defendant's alleged conduct. "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second), Torts § 46, comment h. Therefore, defendant's motion for summary judgment on the intentional infliction of emotional distress claim is denied.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion for summary judgment on the Title VII and Rehabilitation Act claims is GRANTED. Defendant's motion for summary judgment on the ADA disability, CFEPA disability, and intentional infliction of emotional distress claims is DENIED.

Dated this 28th day of March, 2012 at Bridgeport, Connecticut.

```
                    /s/
            WARREN W. EGINTON
            SENIOR UNITED STATES DISTRICT JUDGE
```